# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
MAYA BREWER                     )
                                )
       Plaintiff,               )
                                )
       v.                       )      Civil Action No. 11-2263 (GK)
                                )
HR POLICY ASSOCIATION, et al.,  )
                                )
       Defendants.              )
_____)
```

## MEMORANDUM OPINION

Plaintiff Maya Brewer brings this action against HR Policy Association, McGuiness & Yager, LLP, and Jeffrey McGuiness (collectively, "Defendants"). Plaintiff asserts causes of action for discrimination in violation of D.C. Code §§ 32-501 -517 et seq., and D.C. Code § 2-1401.05 et seq., under the District of Columbia Family and Medical Leave Act and the District of Columbia Human Rights Act; for sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"); and for negligent infliction of emotional distress.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment [Dkt. No. 8]. Upon consideration of the Motion, Opposition [Dkt. No. 9], Reply [Dkt. No. 11], and the entire record herein, and for the reasons stated below, Defendants' Motion to

Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment is **granted in part and denied in part**.

I.   **Background**

    A.   **Factual Background**[1]

Plaintiff Maya Brewer is a resident of Virginia. Defendant, HR Policy Association ("HR POLICY") is a non-profit whose principal place of business is in the District of Columbia. Defendant McGuiness & Yager ("M&Y"), is a limited liability partnership, whose principal place of business is in the District of Columbia. Defendant Jeffrey McGuiness ("McGuiness"), a resident of the District of Columbia, is the president and CEO of HR POLICY, a senior partner with M&Y, and was, during the relevant time period, Brewer's direct supervisor.

In August 2009, M&Y hired Brewer as a full-time employee in the District of Columbia. In July 2010, Brewer informed McGuiness that she was pregnant and inquired about maternity leave policies. According to Brewer, she was led to believe that she was the first employee at HR POLICY or M&Y to ever become pregnant and that Defendants had not yet formulated a maternity leave policy to accommodate employees who become pregnant. Amended Complaint ("Am. Compl.") ¶ 13. Brewer claims that McGuiness informed her that he would have to "get back to her" on the specifics of Defendants'

---

[1] Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h).

maternity leave policy and their ability to accommodate pregnant employees. <u>Id.</u>

According to Brewer, in preparation for her maternity leave, she undertook efforts to arrange for a temporary fill-in employee for her position and informed McGuiness of these efforts. Am. Compl. ¶ 14. Brewer claims that, "[d]espite these efforts, on or about October 5, 2010, McGuiness informed [her] that her employment would end following the expiration of any maternity leave taken by [her]." <u>Id.</u> ¶ 15. According to Brewer, the next day, on October 6, 2010, Tim Bartl, a partner with M&Y, told her "that he wanted to 'clear the air' and informed her that she was 'not necessarily being terminated per se' but that she would have to re-apply for her job when she wished to return to work after the birth of her child." <u>Id.</u> ¶ 16. Brewer claims that she was "distraught and confused as to the status of her employment," but continued to carry out her work duties. <u>Id.</u>

In October 2010, M&Y permitted Brewer to work from home due to her pregnancy. While working from home, Brewer continued to receive her full salary.

According to Brewer, on November 5, 2010, HR POLICY publicly announced in an email blast the hiring of Vicky Mitchell to fill her position. <u>Id.</u> ¶ 17. Brewer states that on November 9, 2010, McGuiness emailed her to ask where she would like her personal belongings sent. <u>Id.</u> ¶ 18. Shortly thereafter, Brewer claims that

her name was removed from HR POLICY'S website. Id. ¶ 19. Finally, Brewer contends that her voicemail greeting was deleted in November 2010 and her telephone extension was assigned to Vicky Mitchell. Id. ¶ 20.

On or about November 13, 2010, Brewer gave birth to her child. On November 15, 2010, as part of M&Y's short term disability plan, Brewer began to receive 60% of her salary for three weeks following the birth of her child. Brewer received holiday pay as follows: two and one-half days in November 2010 for Thanksgiving; three days in December 2010 for Christmas and New Years; one day in January 2011 for Martin Luther King Day; and one day in March 2011 for a firm holiday.

On or about December 21, 2010, Brewer emailed Marisa Milton, then a partner with M&Y and an officer with HR POLICY, informing Ms. Milton that she was ready to return to work. Brewer's email was not answered.

In early January 2011, McGuiness received a demand letter on behalf of Brewer from Scott Lovernick of Jeffrey Scott, LLP, a law firm in San Francisco. The letter was dated December 27, 2010, six days after Brewer sent her email to Ms. Milton. In that letter, Mr. Lovernick stated that his firm had been retained by Brewer to pursue her claims related to "the company's decision to terminate her employment." The letter also stated that Brewer was an employee of HR POLICY.

4

On January 13, 2011, M&Y, through one of its partners, Michael Peterson, responded to Mr. Lovernick's December 27, 2010 letter, stating that Brewer was M&Y's employee and that Brewer had not been terminated, but was on leave. The letter further explained that Brewer was still on M&Y's health plan and that it continued to pay her benefits. In closing, the letter stated, "[w]e anticipate hearing from Maya [Brewer] regarding her post-leave plans and discussing with her the opportunities going forward with the firm." Brewer did not contact M&Y in response to that letter.

On February 4, 2011, M&Y received a second letter from Mr. Lovernick, dated January 31, 2011, in which he repeated his position that Brewer had been terminated. Mr. Lovernick also noted that Brewer had sent an email to Ms. Milton on December 21, 2010, but that Ms. Milton had not responded.

According to Defendants, no one at M&Y, including Ms. Milton, received or was aware of the email Brewer sent on December 21, 2010. Defs.' SOMF ¶ 38. Defendants contend that upon receipt of the January 31, 2011 letter from Mr. Lovernick, M&Y's information technology consultant found that the email never reached Ms. Milton, as it went directly into "spam mail." Id.

On February 7, 2011, M&Y sent another letter to Mr. Lovernick, reiterating that Brewer was still an employee; that she continued to be on M&Y's health plan; that she continued to have her health benefit premiums paid by M&Y; and that she had been paid for the

Martin Luther King Day holiday in January 2011. M&Y concluded the letter with an invitation to hear "directly from Maya [Brewer] to discuss her post-leave plans and her opportunities going forward with the firm."

On February 15, 2011, M&Y sent a letter directly to Brewer reiterating that she was still an employee of M&Y. M&Y again requested that Brewer contact M&Y to discuss her post-leave plans with the firm. Brewer did not respond to that letter.

On March 15, 2011 M&Y sent another letter to Brewer. In that letter M&Y stated that because it had not heard from Brewer or her attorney, it assumes that she terminated the employment relationship. The letter also stated that if that assumption is incorrect or if Brewer wants to continue her employment with M&Y, she should contact McGuiness by March 22, 2011.

On March 23, 2011, having heard nothing from Brewer or her attorney, M&Y's Director of Finance sent Brewer a continuation of coverage letter for her health benefits.

**B.    Procedural Background**

On December 20, 2011, Plaintiff filed her Complaint against Defendants [Dkt. No. 1].

On December 29, 2011, Plaintiff received her right-to-sue letter from the EEOC as it relates to claims brought under Title VII.

6

On February 8, 2012, Defendants filed their Motion to Dismiss, or in the Alternative, for Summary Judgment on all counts of Brewer's Original Complaint. [Dkt. No. 5]. Plaintiff did not oppose Defendants' First Motion to Dismiss. Instead, on February 24, 2012, she filed an Amended Complaint. [Dkt. No. 7].

On March 12, 2012, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment [Dkt. No. 8]. On March 26, 2012 Plaintiff filed her Opposition to Defendants' Motion to Dismiss her Amended Complaint [Dkt. No. 9]. On April 2, 2012, Defendants filed their Reply to Plaintiff's Opposition [Dkt. No. 11].

## II.  Standard of Review

Defendants move to dismiss Plaintiff's Complaint or, in the alternative, for summary judgment. Where, as here, the Court must consider "matters outside the pleading" to reach its conclusion, a Motion to Dismiss "must be treated as one for summary judgment and disposed of as provided in Rule 56." See Fed. R. Civ. P. 12(b); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003) (noting that when a judge considers matters outside the pleadings, a motion to dismiss under Rule 12(b)(6) must be converted into a Motion for Summary Judgment under Rule 56).

Under Rule 56, summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

7

fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52. Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## III. Analysis

### A.   Count I:  The DCFMLA and DCHRA

Plaintiff claims that Defendants discriminated against her in violation of the District of Columbia Family and Medical Leave Act

(DCFMLA),[2] D.C. Code §§ 32-501-517 <u>et seq.</u>, and the District of Columbia Human Rights Act (DCHRA),[3] D.C. Code § 2-1401.05 <u>et seq.</u> Amended Compl. ¶¶ 23-27. Plaintiff alleges that "Defendants terminated [her] with knowledge and because of her pregnancy/sex and after she requested maternity leave" and that "[a]s a result of defendants' conduct, [she] has experienced humiliation, mental anguish and physical and emotional distress and is entitled to economic damages exceeding $1,000,000." <u>Id.</u> at ¶¶ 24, 26. Plaintiff further alleges that "Defendants' [] acts were willful, malicious

---

[2] The DCFMLA provides employees of a covered employer with sixteen weeks of protected medical leave during any twenty-four-month period. D.C. Code § 32-503(a). The act guarantees that an "employee returning from medical leave will be restored to the same position which that employee held when the leave began, or to an equivalent position." <u>Harrison v. Children's Nat'l Med. Ctr.</u>, 678 A.2d 572, 575 (D.C. 1996); <u>see also</u> D.C. Code § 32-505(d). Additionally, to the extent that employment benefits were provided prior to the temporary leave period, an employer is required to continue providing those benefits after an employee takes protected leave. <u>See</u> § 32-505(a). The act provides that an employee may bring a private cause of action to enforce its provisions. D.C. Code § 32-510(a).

[3] The DCHRA provides in relevant part that "discrimination on the basis of sex shall include, but not be limited to, discrimination on the basis of pregnancy..." and that "women affected by pregnancy...shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and this requirement shall include, but not be limited to, a requirement that an employer must treat an employee temporarily unable to perform the functions of her job because of her pregnancy-related condition in the same manner as it treats other employees with temporary disabilities." D.C. Code § 2-1401.05.

and oppressive" and that as such "[she] is entitled to an award of punitive damages." Id. at ¶ 27.

### 1. Defendants' Motion to Dismiss Plaintiff's DCFMLA Claim Is Granted

Defendants argue that judgment should be granted in their favor on Plaintiff's DCFMLA claim because they were not covered employers. Defendants contend that "it is uncontroverted" that the number of employees for any and all Defendants, whether jointly or severally, is fewer than the twenty employees required to allege a claim under the DCFMLA.[4] Defs.' MTD at 19. Defendants additionally argue that the DCFMLA claim is untimely as to all Defendants and therefore fails to state a claim. Id. at 24-26

Plaintiff responds that a genuine issue of material fact exists as to whether Defendants are covered employees under the DCFMLA. Plaintiff argues that "[w]ithout the benefit of discovery [she] identifies thirty-two (32) individuals whom she worked alongside at defendants McGuiness & Yager and HR POLICY during from [sic] August 2009 - October 2010." Pl.'s Opp'n at 6; see also Brewer Decl. ¶ 17. Plaintiff does not oppose Defendants' argument that her DCFMLA claim is untimely.

The DCFMLA has a one-year statute of limitations. See D.C. Code § 32-510(b)(2001). The District of Columbia Code provides that

---

[4] In order to be a covered employer under the DCFMLA, the employer must employ twenty or more persons in the District of Columbia. D.C. Code 32-516(2).

"[n]o civil action may be commenced more than 1 year after the occurrence or discovery of the alleged violation [of the DCFMLA]" D.C. Code § 32-510(b)(2001). Since Brewer filed her Complaint on December 20, 2011, any alleged adverse employment action prior to December 21, 2010 is not actionable.

Plaintiff claims to have been terminated on either October 5, 2010 or October 6, 2010, dates that do not fall within the DCFMLA's one year limitations period. See Am. Compl. ¶¶ 15-16. Plaintiff has presented no opposition to Defendants' argument that her claim is untimely. Therefore, Defendants' Motion to Dismiss Plaintiff's DCFMLA claim is **granted.**

### 2. Defendants' Motion to Dismiss Plaintiff's DCHRA Claim Is Granted

Defendants argue that Plaintiff's DCHRA Claim is untimely as to HR POLICY and McGuiness.[5] Defs.' MTD at 26. Defendants further argue that "Plaintiff's allegations in the Amended Complaint are the type of conclusory and formulaic recitations disregarded by the Supreme Court in [Ashcroft v. Iqbal, 566 U.S. 662 (2009)]" and that "[t]he factual averments, whether timely or not, do not suggest or imply discrimination on account of pregnancy." Id. at 27. Plaintiff does not oppose Defendants' arguments.

---

[5] M&Y does not seek dismissal of the DCHRA claim on timelines grounds "assuming arguendo that the filing of a Charge of Discrimination with the EEOC tolled the cause of action against it." Defs.' MTD at 26 n.26.

Like the DCFMLA, the DCHRA has a one-year statute of limitations. <u>See</u> D.C. Code § 2-1403.16(a). Again, Plaintiff has presented no opposition to Defendants' argument that her DCHRA claim is untimely. Moreover, the Court agrees with the Defendants' <u>unopposed</u> argument that Plaintiff failed to sufficiently allege a claim under the DCHRA. Accordingly Defendants' Motion to Dismiss Plaintiff's DCHRA claim is **granted.**

**B.    Count II:  Title VII**

Under Title VII, it is unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his [or her] compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.". 42 U.S.C. § 2000e-2(a)(1). The term "employer" under Title VII refers to "a person who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year..." 42 U.S.C. § 2000e(b).

Plaintiff alleges that "Defendants' termination of her employment based on her sex/pregnancy constitutes a willful violation of Title VII of the Civil Rights Act of 1964, as amended, entitling [her] to all relief afforded by the statute, including punitive damages." Am. Compl. ¶ 29.

### 1.    Defendants' Motion to Dismiss Plaintiff's Title VII Claim as to McGuiness Is Granted

The case law in this Circuit is clear that individuals may not be held personally liable under Title VII. <u>Yesudian ex rel. U.S. v. Howard Univ.</u>, 270 F.3d 969, 972 (D.C. Cir. 2001) ("[W]e and all other circuits have held that the word 'employer' [under Title VII] does not cover a supervisor in his [or her] personal capacity."); <u>see also</u> <u>Brown v. Children's Nat'l Medical Ctr.</u>, 773 F. Supp. 2d 125, 134, 135 (D.D.C. 2011) (granting motion to dismiss individuals from Title VII claims)(citing <u>Gary v. Long</u>, 59 F.3d 1391, 1393 (D.C. Cir. 1995). Accordingly, Defendants' Motion to Dismiss Plaintiff's Title VII claim against McGuiness is **granted**.

### 2.    Defendants' Motion to Dismiss Plaintiff's Title VII Claim as to HR POLICY and M&Y Is Denied

Defendants contend that Brewer failed to set forth a <u>prima facie</u> case for a violation of Title VII because none of the Defendants had fifteen or more employees for twenty or more weeks for any year in which Plaintiff was employed. Defs.' MTD at 30. Defendants contend that "[HR POLICY and McGuiness] did not have any employees in 2009 or 2010, and that [M&Y] employed only 10 employees in July 2010 and never had 20 employees in any week in 2009 or 2010 in the District of Columbia." <u>Id.</u> at 31. To support their position, Defendants point to records from M&Y's payroll vendor, which they contend show that M&Y never had fifteen or more

13

employees for twenty weeks in any relevant year. Defs.' Reply at 12; see Exhibit 4 to Defs.' MTD.

Plaintiff responds that there is a genuine dispute regarding whether Defendants, either jointly or severally, were "employers," as defined by Title VII. To support her argument, Plaintiff points to a print-out from the current[6] HR POLICY website, which lists twenty-one individuals under the category of "Officers & Staff." Exhibit 3 to Pl.'s Opp'n. Plaintiff also identifies by name twenty-eight individuals who she claims to have "worked with during 2009-2010 while employed by [M&Y] and HR POLICY." Brewer Decl. ¶ 17. Plaintiff further argues that even if the Court determines that "any of Plaintiff's claims are insufficiently pleaded, then Plaintiff should be provided an opportunity to conduct discovery [under Federal Rule of Civil Procedure 56(d)] and thereafter receive leave to amend." Pl.'s Opp'n at 12.

It is well established in this Circuit that summary judgment "ordinarily 'is proper only after the [non-moving party] has been given adequate time for discovery.'" Americable Int'l, Inc. v. Dep't of Navy, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)). Under Federal Rule of Civil Procedure 56(d), a court "may deny a motion for summary judgment or order a continuance to permit

---

[6] Plaintiff contends that she does not have access to HR POLICY website history to determine who was listed as employees during the period of her employment. Brewer Decl. ¶ 19.

discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989). Rule 56(d) is "intended to prevent railroading a non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." Milligan v. Clinton, 266 F.R.D. 17, 18 (D.D.C. 2010) (citations omitted). Therefore, "District Courts are afforded discretion in ruling on requests for additional discovery pursuant to Rule 56[d]." Stella v. Mineta, 284 F.3d 135, 147 (D.C. Cir. 2002).[7]

In this case, Defendants' Motion was filed on March 12, 2012, well before discovery had begun.[8] In fact, at this time, discovery remains at an early stage and is not scheduled to end until December 15, 2012. In responding to Defendants' Motion, Plaintiff identified with adequate specificity the discovery she needs to oppose Defendants' argument that it is not an "employer" under Title VII, including, but not limited to discovery topics such as: "the nature and relationship, or 'economic realities' of the partners/employees/officers/staff at [M&Y] or HR POLICY;" and the

---

[7] Prior to the 2010 amendments to the Federal Rules of Civil Procedure, Rule 56(d) was codified as Rule 56(f). It was recodified with no substantial changes. See Fed. R. Civ. P. 56(d) committee note to 2010 Amendments.

[8] On July 9, 2012, the Court issued a Scheduling Order setting discovery deadlines. Scheduling Order [Dkt. No. 14].

nature of the relationship between M&Y and HR POLICY.[9] See Pl.'s Opp'n at 10.

Based on Plaintiff's representations in her Opposition, the Court agrees that resolution of Defendants' challenge to her Title VII claim is premature because discovery is at such an early stage, and the Defendants' challenge involves disputed factual questions. Defendants raise no other grounds for judgment on Plaintiff's Title VII claim. Accordingly, Defendants' Motion to Dismiss Plaintiff's Title VII claim against HR POLICY and M&Y is **denied.**

## C. Count III: Negligent Infliction of Emotional Distress

Plaintiff claims that "Defendants' intentional, malicious, willful and wanton acts toward [her] constitute negligent infliction of emotional distress entitling [her] to all relief allowed by law, including the award of compensatory, general and punitive damages." Am. Compl. ¶ 31.

Defendants argue that Plaintiff's claim for negligent infliction of emotional distress should be dismissed because "Brewer fails to allege any factual support for her claim." Defs.' MTD at 36.

---

[9] Plaintiff argues that "[a] genuine issue of fact [] exists as to whether defendants McGuiness & Yager and HR POLICY are 'alter egos' of one another or 'joint employers'" whereby an employee of one should also count as an employee of the other under Title VII. Pl.'s Opp'n at 7-8. She then points to evidence supporting her theory that M&Y and HR POLICY are joint employers. Id. at 9-10.

In this Circuit, to recover for negligent infliction of emotional distress, a plaintiff must show either that "(1) the emotional distress resulted from direct physical injury or (2) if there is no physical impact, he [or she] was present in the zone of physical danger created by the defendant's negligence and feared for his [or her] own safety." Kun v. Finnegan, Handerson, Farabow, Garrett & Dunner, 949 F. Supp. 13, 20 (D.D.C. 1998) (citing Mackey v. United States, 8 F.3d 826, 831 (D.C. Cir. 1993); Ryczek v. Guest Services, Inc., 877 F. Supp. 754, 764 (D.D.C. 1995)).

Plaintiff does not allege that any emotional distress resulted from direct physical injury. Plaintiff also does not allege that she was present in a zone of physical danger created by Defendants' negligence and that she feared for her own safety. Finally, Plaintiff does not oppose Defendants' argument that she failed to state a claim for negligent infliction of emotional distress. Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for negligent infliction of emotional distress is **granted.**

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary

Judgment is **granted in part and denied in part.** An Order will accompany this Memorandum Opinion.


August 28, 2012                              ___/s/_____
                                             Gladys Kessler
                                             United States District Judge


**Copies via ECF to all counsel of record**